William CONNOR, Selma Connor and American Guaranty [Guarantee] and Liability Insurance Company, Appellants,

v.

THOMPSON CONSTRUCTION AND DEVELOPMENT CO., Robert P. Thompson and Wilbur Miller, d/b/a Wilbur Miller Electric, Appellees.

No. 52502.

Supreme Court of Iowa.

March 11, 1969.

Shuttleworth & Ingersoll, Cedar Rapids, for appellants.

Ries & Osmundson, Iowa City, and Sargent, Spangler, Hines & Pence, Cedar Rapids, for appellees Thompson Construction and Development Co. and Robert P. Thompson.

Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellee Wilbur Miller, d/b/a Wilbur Miller Electric.

RAWLINGS, Justice.

By law action plaintiffs seek recovery of damages from defendant contractors for fire loss caused by faulty installation of electrical outlet in newly constructed residence. On defendants' motions trial court entered judgments on the pleadings adverse to plaintiffs and they appeal. We affirm in part, reverse in part.

Originally William and Selma Connor, were sole plaintiffs, they being sometimes hereafter referred to as Connors or owners.

Original defendants included Wayne J. Paulson, architect, but an order of dismissal as to him is not challenged and any action against that defendant is not involved in this appeal.

Remaining defendants are Thompson Construction and Development Co. and Robert P. Thompson, hereafter sometimes collectively identified as Thompson or general contractor, and Wilbur Miller, hereafter referred to as Miller or electrical contractor.

By petition first filed the owners alleged, in effect, negligent installation of an electrical outlet with attendant short circuit caused the offending fire. Attached to the petition, as first amended, are copies of separate written contracts with Thompson and Miller.

The Miller agreement, as pled, states in part, "The contractor will provide no fire insurance coverage. Loss by fire shall be the owner's risk."

Attached to defendant Miller's answer is an uncontroverted exhibit captioned, "General Conditions of the Contract." To the extent here relevant it provides:

"FIRE INSURANCE

"The owner shall insure his interest, including the interest of the contractor and all subcontractors hereunder in the entire structure on which work of this contract is to be done, against loss from fire and extended coverage perils, including endorsement for vandalism and malicious mischief coverage for one hundred percent of the insurable value thereof. * * *

"The contractor and all subcontractors shall be named or designated in such capacity as insured jointly with the owner in all policies, all of which shall be open to the contractor's inspection. Certificates of such insurance shall be filed with the contractor if he so requests.

" * * *

"If the contractor is damaged by the failure of the owner to maintain such insurance or to so notify the contractor, he may recover as stipulated in the contract for the recovery of damages."

By stipulation it is agreed the foregoing provisions are also set forth in the specifications, therefore a part of the general conditions, in connection with the Thompson contract.

Miller also affirmatively asserts, (1) Connors assumed all risk of loss by fire regardless of fault, and (2) they contractually waived any claim for damages arising from fire loss regardless of cause.

Connors moved for adjudication of law points relative to the foregoing allegations by Miller. Trial court ruled adverse to Connors holding the pleadings disclose, as a matter of law, an existing, valid and effective defense by Miller, the electrical contractor. This ruling was referred to by trial court as in part the basis for judgments finally entered.

Miller then filed motion to dismiss on the ground the pleadings disclose Connors held a policy with American Guarantee and Liability Insurance Company, had been fully compensated by their insurer, and were not the real parties in interest. That motion was sustained.

Following the foregoing adjudication of law points Thompson, (general contractor), also moved for dismissal, partially on the premise Connors' petition revealed no responsibility on his part as general contractor with regard to installation of the alleged negligently installed electrical system. Trial court dismissed on this motion.

Thereupon Connors filed an amended and substituted petition adding, as an additional plaintiff, American Guarantee and Liability Insurance Company, sometimes hereafter identified as American, insurer, or subrogee. By this pleading it is alleged there was a negligence-caused-loss resulting from *destruction of the residence structure, with additional damage to contents, sod and attendant expenses incurred for temporary living quarters,* attributable to the joint and several negligence of defendants. It is also asserted the loss was covered by insurance, Connors were reimbursed, and their claim for alleged fire damage has been assigned to American. Plaintiffs, Connors and American, also assert a breach of implied warranty by Thompson, and Miller.

Defendants, individually, then moved for judgment on the pleadings. According to the record plaintiffs, Connors and American, filed no resistance to these motions. They were thereupon sustained by trial court and the action against Thompson and Miller dismissed.

I. It is at once evident Connors did not stand on the pleadings when trial court ruled adverse to them on the motions for adjudication of law points, and to dismiss.

Rather they pled over and, with American, finally elected to stand on the amended and substituted petition.

■ Accordingly the judgments on pleadings are deemed final adjudications from which appeal is here taken. Rule 86, Rules of Civil Procedure; Cover v. Koeper, 258 Iowa 35, 36–37, 137 N.W.2d 594; and Wernet v. Jurgensen, 241 Iowa 833, 835–836, 43 N.W.2d 194. In fact the appeal is in part so taken and the case will be accordingly reviewed.

II. Rule 222, R.C.P. states: "Any party may, at any time, on motion, have any judgment to which he is entitled under the uncontroverted facts stated in all the pleadings, or on any portion of his claim or defense which is not controverted, leaving the action to proceed as to any other matter of which such judgment does not dispose."

Also, to the extent here relevant, Rule 102, R.C.P., provides, every fact pleaded and not denied in a subsequent pleading shall be deemed admitted.

With regard to the foregoing see 38 Iowa L.Rev. 548.

So the problem before us must be resolved on the basis of pleadings filed.

III. Plaintiffs first contend, on appeal, trial court erred in holding adverse to them on their motion for adjudication of law points. But as heretofore indicated, that ruling merged in the final adjudication from which appeal is taken. This and all other assignments of error will be considered in that light.

As previously disclosed Article 4 of the contract between the owners and electrical contractor states in substance, the latter is to provide no fire insurance, loss thereby to be at the former's risk.

■ Were we dealing with this clause alone, it would undoubtedly compel a conclusion adverse to Miller. In that regard this court held in Sears, Roebuck & Co.,

Inc. v. Poling, 248 Iowa 582, 81 N.W.2d 462, contractual provisions exculpating one party from liability for damages will not be extended to include negligence by the offending party unless such intent is clearly disclosed. See also Annos. 175 A.L.R. 8, 29, and 144.

IV. But there are other provisions in the Miller contract which must be considered.

■ As stated in Archibald v. Midwest Paper Stock Company, 260 Iowa 1, 148 N.W.2d 460, 463: "This jurisdiction has adopted the rule that a contract should be read and interpreted as an entirety rather than seriatim by clauses and that the position of clauses in such instrument is not material or controlling."

We look then to those undisputed contract clauses, quoted supra, under "General Conditions" from which it appears the owners agreed to procure insurance on the entire structure against loss by fire for one hundred percent of its insurable value, with Miller to be jointly insured.

According to the pleadings, upon destruction of their residence, Connors were reimbursed by American, and correspondingly assigned their claims against defendants to that insurer.

The issue first to be resolved is whether the pleadings reveal right of recovery by Connors from Miller for loss of the structure.

■ Without doubt they show Connors breached the agreement with Miller by failing to obtain full structural fire insurance coverage, naming him a co-insured. Restatement, Contracts, section 312; 17 Am. Jur.2d, Contracts, section 425, page 880; and Simpson, Treatise on Contracts, section 187, page 377.

This breach served in turn to make the owners Miller's insurer and as such liable to him, on loss, to the same extent as though the prescribed insurance had been obtained. Smith v. Ryan, Fla.App., 142 So.2d 139, 141,

and Appleman, Insurance Law and Practice, section 2261, page 113.

▆ And, as the court said in Miller v. Kujak, 4 Wis.2d 80, 90 N.W.2d 137, 140: "* * * an insurer cannot recover by right of subrogation from his own insured." See too Builders & Mfrs. Mut. Cas. Co. v. Preferred Automobile Ins. Co. (6 Cir.) 118 F.2d 118, 121–122.

▆ V. Also, where there is damage by fire, occasioned by mere fault or negligence on the part of an insured, absent fraud or design, it is a loss within the ambit of the coverage agreement. Stated otherwise, any person who insures his property against damage by fire knows he is protected, to the extent of coverage, for any loss, regardless of causation, deliberate purpose excepted. Nash v. American Ins. Co., 188 Iowa 127, 132, 174 N.W. 378, 10 A.L.R. 724; United States Fire Insurance Co. v. Phil-Mar Corp., 102 Ohio App. 561, 131 N.E.2d 444, 447; 45 C.J.S. Insurance § 822, page 870; and 29A Am.Jur., Insurance, section 1306, page 428. See also Annos. 10 A.L.R. 728.

▆ It is now apparent the action by Connors against Miller for destruction of their residence, constitutes an attempt by the former to self-subrogate against the latter standing in the position of an insured. This they cannot do.

Furthermore, if Connors had not breached the contract requiring them to name Miller as a co-insured, full recovery by the owners from the electrical contractor would have been equally impossible.

VI. The foregoing conclusion finds support in connection with the right of American Guarantee and Liability Insurance Company to seek recovery from Miller.

▆▆ Unquestionably American's position is that of a subrogee or assignee and its rights, derived from those held by Connors, the insured, are accordingly limited. Additionally any defense which Miller, the claimed wrongdoer, may assert against an action by Connors is equally effective in a derivative proceeding brought by the insurer for recovery from Miller. Archibald v. Midwest Paper Stock Company, 260 Iowa 1, 148 N.W.2d 460, 464–465; Kent v. Bailey, 181 Iowa 489, 493, 164 N.W. 852; 46 C.J.S. Insurance § 1209(b), page 154; and 29A Am.Jur., Insurance, section 1720, page 799.

Resultantly American has no right of action against Miller for loss to Connors' residence.

▆ VII. The question now posed is whether the contract between Connors and Miller precludes recovery for destruction of household contents, damage to sod, and expenses incurred for temporary quarters.

At this point reference to the contract makes it evident the duty undertaken by Connors was limited to the obtaining of full insurance coverage on the structure. No provision is made relative to other losses. As a result, any right of recovery which Connors may have against Miller, held by American as subrogee or assignee, for fire related damage beyond that of the structure itself still exists.

In brief it thus appears there can here be no recovery from Miller by Connors, and in turn American, for structural damage, but the action for attendant losses is not determinable upon a motion for judgment on the pleadings. See 38 Iowa L. Rev. 548, 549.

VIII. Referring again to Rule 222, R.C. P., quoted supra, it will be noted provision is there made for judgment on the pleadings or any portion of a claim or defense which is not controverted.

This means defendant electrical contractor may have judgment on the pleadings as to that portion of his defense directed to the action against him for recovery due to structural damage, even though such remedy is not in order with regard to other fire related losses. See 71 C.J.S. Pleading § 441, page 891, and § 508(4) (b), page 1043.

By the same token, any existing action against the electrical contractor relative

to claimed ancillary losses must stand, leaving the right to accordingly proceed against Miller.

IX. Plaintiffs also claim trial court erred in sustaining the Thompson motion to dismiss. Again we look to the final judgment and pleadings upon which it is predicated.

Those pleadings reveal, without dispute, Connors and Thompson entered into a witten contract. In material part it required constuction by the general contractor of a residence in accord with plans and specifications.

As aforesaid the same insurance agreements attendant upon Miller's contract, under general conditions, are a part of the Thompson contract. See Bartels v. Hennessey Brothers, Inc., Iowa, 164 N.W.2d 87, 91. This means relevant conclusions set forth infra, relative to Miller, apply with equal force to Thompson.

However, the general contractor, in moving for judgment on the pleadings, urged he had no part in the designing, installation or overseeing of electrical work, and Connors assumed all risk of loss by fire, therefore plaintiffs have no cause of action against him.

Here again the pleadings come into play. By their amended and substituted petition plaintiffs assert, in substance, Thompson and Miller were jointly and severally negligent in the installation of a fire-causing electrical outlet, and breach of implied warranty as to fitness.

Thus, a fact issue is facially presented by the petition relative to the matter of Thompson's participation or absence thereof in the installation of the offending electrical system or any part thereof.

Be that as it may we now hold, for the reasons set forth above in connection with the action against Miller, the judgment on pleadings entered by trial court denying plaintiffs right of recovery from Thompson due to structural damage must stand.

By the same token it is evident trial court erred in entering judgment favorable to the general contractor regarding other fire related losses as to which the action against Thompson may be pursued.

X. We turn now to the matter of real party in interest.

The aforesaid amended and substituted petition itemizes these claimed fire losses:

| | |
|---|---|
| Damage to structure | $25,348.66 |
| Damage to sod | 155.00 |
| Damage to contents of house | 6,688.78 |
| Temporary living quarters | 1,778.64 |
| TOTAL | $33,971.08 |

This aggregate sum was admittedly paid to Connors by American.

Despite that fact plaintiffs ask $33,981.08, or $10 more than the itemized loss set forth above. But nothing in the petition discloses any basis upon which plaintiffs can have or secure the aforesaid $10 in excess of the sum paid over by American. As trial court observed, there is a mistake in plaintiffs' addition.

Clearly then this is not a case of partial subrogation, for Connors have been reimbursed in full.

And as aforesaid, American, by subrogation and assignment, has been vested with all rights and remedies held by Connors against Thompson and Miller.

Here rule 2, R.C.P. becomes applicable. It states in relevant part: "Every action *must* be prosecuted in the name of the real party in interest." (Emphasis supplied).

Dealing with a statutory enactment identical with our rule 2, supra, the court aptly stated in Shambley v. Jobe-Blackley Plumbing & Heating Co., 264 N.C. 456, 142 S.E. 2d 18, 20, 13 A.L.R.3d 224: "The assignment by plaintiffs to their insurer attempting to authorize the suit in plaintiffs' name neither created nor transferred any new cause of action against the defendants. Without written assignment equity trans-

fers to the insurer the right to sue the tortfeasor whose primary liability the insurer had discharged. 'The payment of a total loss by the insurer works an equitable assignment to him of the property and all the remedies which the assured had * * * for the recovery of its value. * * * This right is not dependent upon, nor does it grow out of, any privity of contract. * * * The rights acquired by subrogation do not depend upon a written assignment of the claim. Upon payment of the insurer, the insurance company is regarded as an assignee in equity.' " See also section 515.138 (Sixth), Code, 1966; Russell v. Chicago, M. & St. P. Ry. Co., 195 Iowa 993, 1000, 191 N.W. 806, 192 N.W. 267; 46 C.J.S. Insurance § 1209(b), page 154, and § 1211(a) (1), page 176; and 29A Am.Jur., Insurance, section 1719, page 797.

■ Pursuing the matter one more step this court said in Hunt v. Wright, 256 Iowa 1378, 1380, 131 N.W.2d 268: "A party is to be regarded as the real party in interest whenever a payment to him would protect the defendant from the claims of third persons."

■ Under the pleading-disclosed-circumstances with which we are here concerned, payment to American would serve to protect Thompson, and Miller, from any claims by Connors arising out of the subject fire loss.

Clearly the Connors, as subrogors, could not here release Thompson or Miller from liability, nor defeat any existing rights American may hold as subrogee.

By reason of the fact there has been full subrogation in the case at bar, American is the real party in interest and must accordingly proceed against Thompson and Miller in its own name. Stated otherwise, American Guarantee and Liability Insurance Company stands as the sole party plaintiff in this case.

With regard to the foregoing see also 46 C.J.S. Insurance § 1209(c) (2) (b), page 171, and 29A Am.Jur., Insurance, section 1745, page 820.

Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

All Justices concur.