### Richmond

Roland T. Walker, et al.

v.

R. E. Vanderpool, Individually and t/a, Etc.

April 29, 1983.

Record No. 800735.

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson, and Russell, JJ., and Harrison, Retired Justice.

*J. Segar Gravatt* for appellants.
*Paul M. Shuford (Joseph S. Bambacus; Stylian P. Parthemos; Bambacus & Parthemos*, on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

The owners of equitable and legal title to certain real estate filed an amended motion for judgment against R. E. Vanderpool, individually and trading as Vanderpool Heating & Air Conditioning Service (collectively, Vanderpool), seeking damages in the amount of $45,000. The amended motion for judgment alleged that Roland T. and Elizabeth J. Walker entered into an agreement dated November 28, 1977, with Vanderpool for the purchase and installation of an oil-burning furnace in a house on property therein described for the sum of $2,305. A copy of the agreement was attached as an exhibit. The amended motion for judgment further alleged that Vanderpool negligently installed the furnace, thereby causing the house to catch on fire and burn.*

Vanderpool filed his grounds of defense in which he admitted that he entered into the contract dated November 28, 1977, but alleged as an affirmative defense that Roland T. Walker represented himself to be the owner of the property and breached the contract by failing to acquire and maintain fire insurance on the

---

* The original motion for judgment was filed by the equitable owners at the time of the fire, Roland T. and Elizabeth J. Walker. The amended motion for judgment was filed by the owners of the equitable and legal title at the time of the fire and named as plaintiffs the Walkers, James Claude and Harriett Taylor, B. Harold and Carrie Taylor Bindseil, Norman H. and Julia Taylor, Douglas C. and Mabel W. Taylor, and Horsley B. Taylor. After the fire, the Walkers acquired legal title to the premises.

house. Vanderpool also filed a counterclaim against Roland T. and Elizabeth J. Walker alleging that Walker, acting for himself and as agent for Elizabeth J. Walker, entered into a contract with Vanderpool; that Walker failed to acquire or carry fire insurance on the premises as required by the contract; and that to the extent Vanderpool may be held liable for damage to the premises, on account of negligence or otherwise, Walker is obligated to hold Vanderpool harmless. Vanderpool moved for judgment against the Walkers in the amount of $45,000, or in whatever amount Vanderpool may be held liable. The contract included the following language:

All material is guaranteed to be as specified. All work to be completed in a workmanlike manner according to standard practices. . . . Owner to carry fire, tornado and other necessary insurance. Our workers are fully covered by Workmen's Compensation Insurance.

The Walkers admitted in their response to Vanderpool's request for admissions that they failed to purchase or carry fire insurance on the premises.

The Walkers demurred to Vanderpool's counterclaim on the ground that the provision for insurance could not be asserted to protect Vanderpool from the consequences of his own negligence. The trial judge, by letter opinion dated September 21, 1979, construed the contract as requiring the Walkers to carry insurance to protect themselves and Vanderpool, and overruled the demurrer. The Walkers subsequently filed their grounds of defense to the counterclaim denying liability for their admitted failure to carry any kind of insurance on the dwelling. After a hearing, the trial judge, in a letter opinion dated February 20, 1980, ruled that the failure to obtain insurance as required by the contract defeated the plaintiff's claim and that "no evidence could alter the result." Over plaintiffs' objection, the court entered summary judgment in favor of Vanderpool and dismissed the action.

On appeal, the Walkers argue that the trial court erred in refusing to hear evidence of the facts and circumstances surrounding the execution of the contract. They further contend that the court erred in ruling that the contract required them to procure insurance which would protect Vanderpool from his own grossly negligent conduct. Even if a standard fire insurance policy had

been provided, the Walkers say, the manner in which Vanderpool installed the furnace would have constituted a violation of the provision that the insured shall not enhance the risk of fire. We disagree with all these contentions and we will affirm the judgment of the trial court.

The trial court ruled that the contract required the Walkers to procure insurance to protect Vanderpool and themselves. If the contract had made no provision for insurance or had indicated that the parties were to procure their own insurance, the Walkers would have had no obligation to protect Vanderpool. The court reasoned, therefore, that the obvious meaning of the insurance requirement was to provide protection for Vanderpool and that the Walkers' failure to obtain such insurance made them Vanderpool's insurers.

The trial court relied upon *Newport News Shipbuilding & Dry Dock Co.* v. *United States*, 34 F.2d 100 (4th Cir.), *cert. denied*, 280 U.S. 599 (1929), *Monsanto Chemical Co.* v. *American Bitumuls Co.*, 249 S.W.2d 428 (Mo. 1952), and *Valley Industrial Trucks, Inc.* v. *R. D. Werner Co.*, 64 Pa. D. & C.2d 363 (1973).

In *Newport News Shipbuilding*, the contract for repair of a vessel required the owner, the United States, to continue "the present hull, machinery, and equipment insurance" and required the shipyard to procure builder's risk insurance. 34 F.2d at 102. The vessel caught fire shortly before the repairs were completed and the owner sued the shipyard for damages allegedly arising from the shipyard's negligence. The trial judge, sitting without a jury, found that the shipyard had negligently caused the fire. Furthermore, he ruled that the owner's obligation to continue insurance did not relieve the shipyard of liability. The appellate court, however, held that the agreement by the owner to continue the present insurance was for the benefit of both parties and relieved the shipyard of liability to the extent of the amount of insurance coverage which the contract contemplated. The court reasoned that

[t]o hold otherwise would be to hold that the agreement on the part of the United States to carry the "present hull, machinery and equipment insurance," had absolutely no meaning whatever, and was of no value to the shipyard.

. . . .

To say that the meaning of the provision in the contract, as to insurance was that the United States was only to pro-

tect itself, and to allow recovery from the shipyard for the total of the damages, would be to place the parties in the exact situation they would have been in without any provision whatever in the contract as to insurance. Something must have been intended by the parties when the insurance provision was written in the contract.

34 F.2d at 106-07.

The rationale of *Newport News Shipbuilding* was followed in *Monsanto*. There, the co-defendant, California Spray-Chemical Corporation (Cal-Spray), was under contract with Monsanto to convert a dry chemical compound owned by Monsanto into liquid form. The contract provided that "Monsanto agrees to carry adequate insurance to cover all stocks of materials held by Cal-Spray for Monsanto's account." 249 S.W.2d at 430. More than $18,000 worth of the compound was subsequently destroyed by fire. The trial court held that Cal-Spray was protected from liability because of the insurance provision. Monsanto had purchased insurance for its own protection, but the contract provision, as construed by the trial court, required that Monsanto provide insurance for the benefit of both parties. The Supreme Court of Missouri agreed and rejected Monsanto's argument that the provision should not protect Cal-Spray from its own negligence.

In *Valley Industrial Trucks*, a truck-lease agreement required the lessor to "insure the equipment against loss or damage by fire or theft." 64 Pa. D. & C.2d at 363. The lessor subsequently sued the lessee for damage to a truck caused by fire allegedly resulting from the negligence of the lessee's employees. No fire insurance was procured by the lessor for the benefit of the lessee. The court held that the lessor's failure to comply with its agreement to secure such insurance barred its recovery. The court, citing various Pennsylvania cases, including *Hagan Lumber Co.* v. *Duryea School District*, 277 Pa. 345, 121 A. 107 (1923), stated that "[t]he rule is well established that if a person enters into an agreement to obtain insurance and neglects to fulfill his obligation, that person then becomes the insurer and liable as such . . . ." 64 Pa. D. & C.2d at 364.

To the same effect is *Connor* v. *Thompson Construction & Development Co.*, 166 N.W.2d 109 (Iowa 1969). There, the owners of a newly constructed residence agreed with the electrical contractor to provide fire insurance for the joint benefit of the parties.

Subsequently, the owners sued the contractor for fire damage allegedly caused by negligent electrical installation by the contractor. The owners had failed to provide fire insurance coverage with the contractor as a co-insured. The court held that this breach of contract made the owners the contractor's insurer to the same extent as if the insurance had been obtained, and that the insurer could not recover by subrogation from its own insured. Furthermore, the court concluded that the contractor was protected from liability, despite the owners' allegation that its negligence caused the fire, because the fire insurance, had it been obtained, would have insured against damages due to fire of any origin, absent fraud or design by an insured. *Id.* at 113.

We believe the result reached in the cases discussed above is the correct one and is also required in this case. The Walkers were free to reject the contract of November 28, 1977, unless the insurance provision therein was eliminated or modified. There is no allegation in the pleadings nor any suggestion that the contract was not the result of voluntary arm's length negotiation by the contracting parties. We conclude that the meaning of the insurance provision is that the Walkers were obligated to procure insurance which would protect Vanderpool from loss by fire, regardless of cause, other than fraud on the part of Vanderpool. We hold that the trial court did not err in construing the written contract and in refusing to permit the presentation of parol evidence to vary the terms of the contract or to explain the circumstances surrounding its execution.

▮▮▮ The Walkers argue that a fire insurance policy would not have insured against loss due to this fire, allegedly caused by Vanderpool's negligence. This contention that Vanderpool's negligent installation of the furnace, if proved, would constitute an enhancement of the risk sufficient to preclude recovery under a fire insurance policy is not persuasive. Enhancement of the risk is generally held to arise from a permanent change in use or condition rather than from negligence or casual change. 8 G. Couch, Cyclopedia of Insurance Law § 37:699, at 307, § 37:710, at 319-20 (R. Anderson 2d ed. 1961). Furthermore, we agree with the courts of other jurisdictions which have held that, where the plaintiff has contracted to protect the defendant from a loss by procuring insurance, the plaintiff (or his subrogee) may not recover for that loss from the defendant even if the loss is caused by the defendant's negligence. *See, e.g., Smith* v. *Ryan,* 142 So.2d 139, 141 (Fla.

Dist. Ct. App. 1962); *Connor* v. *Thompson Construction & Development Co.*, 166 N.W.2d 109, 113 (Iowa 1969); *Factory Insurance Association* v. *Donco Corp.*, 496 S.W.2d 331, 335 (Mo. Ct. App. 1973).

By breaching their agreement to provide "fire, tornado and other necessary insurance," the Walkers themselves became insurers who cannot recover against Vanderpool, their constructive insured. Finding no error in the trial court's rulings, we will affirm the judgment.

*Affirmed.*

HARRISON, R.J., dissenting.

I would reverse and remand for trial on the merits. This case involves gross negligence and unworkmanlike performance by a heating contractor. The Walkers allege that their dwelling was destroyed by fire because Vanderpool installed in the building a heating unit, connected the unit to a "non-existent" chimney, and then activated the oil furnace.

The agreement referred to is in fact a "proposal" by Vanderpool to the Walkers to sell and install the heating unit. The proposal was prepared by Vanderpool, and at the bottom of the printed form, in very small type, is found the language: "Owner to carry fire, tornado and other necessary insurance," and "All work to be completed in a workmanlike manner according to standard practices. . . ." There is a handwritten insertion in the body of the proposal whereby Vanderpool agrees that "All work to be installed in a workmanlike manner to the satisfaction of homeowner."

It is not reasonable to believe that the Walkers would have selected a contractor, one who twice agreed in writing to perform in a workmanlike manner and to follow standard practices, and at the same time agree that they (the Walkers) would purchase insurance to protect and save harmless that contractor, and his liability insurance carrier, from the contractor's own negligent, improper, and unworkmanlike performance.

The decision of the majority relieves the contractor of his warranty and obligation to well and truly perform his agreement with the Walkers and exonerates both the contractor and his liability carrier from any liability under the agreement. At the same time,

and without supporting evidence, "other necessary insurance" is construed to include liability insurance, and the Walkers are held to strict performance.

I find the words "other necessary insurance" to be vague, uncertain, and indefinite, and Vanderpool's proposal to be ambiguous. The true agreement reached by the parties as to the type, kind, and amount of insurance they contemplated was to be carried by the owner and by the contractor, respectively, can be determined only from evidence of the facts and circumstances surrounding the proposal by Vanderpool and its acceptance by the Walkers. It would indeed be surprising if it developed that the Walkers agreed to purchase insurance to insulate Vanderpool from his negligence in performing the contract, as the majority has held.