**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 04-2004

FEDERAL INSURANCE COMPANY, a/s/o Transworld
Connection, Limited,

Plaintiff - Appellant,

versus

THERESA ANN WARD; PAT BONDURANT,

Defendants - Appellees.

Appeal from the United States District Court for the Western
District of Virginia, at Lynchburg.    Norman K. Moon, District
Judge.  (CA-03-102)

Argued: October 26, 2005           Decided: January 24, 2006

Before LUTTIG, MICHAEL, and GREGORY, Circuit Judges.

Reversed and remanded by unpublished opinion.  Judge Gregory wrote
the opinion, in which Judge Luttig and Judge Michael joined.

**ARGUED:** Daniel  J.  Luccaro,  COZEN  O'CONNOR,  Philadelphia,
Pennsylvania, for Appellant.  Henry Moseley Sackett, III, EDMUNDS
& WILLIAMS, P.C., Lynchburg, Virginia; John Tandy Cook, CASKIE &
FROST, Lynchburg, Virginia, for Appellees.  **ON BRIEF:** Robert M.
Caplan,  COZEN  O'CONNOR,  Philadelphia,  Pennsylvania;  Elisabeth
Ayyildiz, MORIN & BARKLEY, L.L.P., Charlottesville, Virginia, for
Appellant.

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

GREGORY, Circuit Judge:

Federal Insurance Company ("Federal") as subrogee of Transworld Connection, Ltd. ("Transworld"), appeals the district court's grant of summary judgment in favor of Theresa Ann Ward and Pat Bondurant (collectively "the Employees"), former employees of Transworld. The resolution of this dispute turns on whether the district court properly considered the Employees to be insured under a policy issued to Transworld by Federal ("the Policy") and thus immune from suit under Virginia's anti-subrogation rule.[1] On appeal, Federal argues that the district court erred in interpreting the Policy under Virginia's "course of employment" test and in awarding summary judgment to the Employees on that basis. Federal further contends that had the court applied the correct tests of coverage, the award of summary judgment in favor of the Employees would not have been appropriate. Because we agree that the district court applied the wrong test and that the Employees' alleged act of negligence is not covered by the Policy, we reverse the grant of summary judgment in favor of the Employees,

[1]Virginia's anti-subrogation rule provides that an insurance company may not seek indemnification from its insured. Walker v. Vanderpool, 302 S.E.2d 669, 672 (Va. 1983) ("where the plaintiff has contracted to protect the defendant from a loss by procuring insurance, the plaintiff (or his subrogee) may not recover for that loss from the defendant even if the loss is caused by the defendant's negligence."); see also Sherwood Trucking, Inc. v. Carolina Cas. Ins. Co., 553 F.2d 568, 572 (4th Cir. 1977).

hold that they are not immune from suit, and remand for further consideration.

I.

On September 9, 2003, Transworld's facility located at 260 Fastener Drive in Lynchburg, Virginia, caught fire. J.A. 129. At the time, Transworld had property and liability coverage through the Policy issued by Federal. Id. The Policy insured Transworld's employees when performing two classes of covered acts: "acts within the scope of their employment by [Transworld]" or "duties related to the conduct of [Transworld's] business." Id. at 502. Under the Policy, for which Transworld paid $14,269 annually, id. at 337, Federal reimbursed Transworld for $352,832.34 and $240,000 in property and personal property losses, respectively. Id. at 129. Because the Policy, in limited instances, also covered Transworld's employees' personal property, a portion of Federal's payments to Transworld was for damage to the personal effects of Transworld's employees. Id. at 352, 335-37. Ward, for example, received $230 as compensation for her personal property losses. Id. at 33, 333.

Federal maintains that the fire resulted from the Employees' negligent disposal of smoking materials. At approximately 6:00 p.m. on the evening of the fire, after everyone except for the Employees and two waiting children had left the building, Ward shut

3

down her computer and lit a cigarette as she prepared to leave work.[2]  Id. at 200, 570-74.  After Bondurant completed her work and shut down her computer, she entered Ward's office, observed Ward smoking, and lit her own cigarette.  Id. at 192-93, 204, 570-74. Just before leaving Ward's office, Ward and Bondurant flicked ashes from the ends of their cigarettes into a trash can filled with paper.  Id. at 193, 206-10, 574.  Bondurant claims that she then peered into the trash can and observed that nothing was smoldering or smoking before allowing Ward to place the trash can back under the desk.  Id. at 193.  Thereafter, Ward and Bondurant left Ward's office, Ward set the burglar alarm, and she, Bondurant, and the children exited the building.  Id. at 196-97, 570-74.

Transworld did not have any written rules regarding smoking prior to the fire, but there was an informal policy that employees were not to smoke in the building during business hours as a courtesy to non-smokers.  J.A. 223-24, 229.  The president and owner of Transworld, Joe Tubbs, was aware that employees smoked inside the facility after hours, and allowed the practice so long as no one objected.  Id. at 226-27.

Tubbs has made contradictory statements as to whether the Employees were acting for the benefit of the company while smoking

---

[2]Ward testified that she could not remember the exact order of her activities, i.e., whether she shut down the computer before or after lighting her cigarette.  J.A. 203.  The precise order of Ward's activities, however, is immaterial to our discussion.

on the night of the fire. He testified that he considered Ward to be "on company time," "doing her job" until she left the building because she was expected to set the building alarm. J.A. 321-22. In a letter mailed to Federal upon learning that Federal was pursuing legal action against the Employees, Tubbs stated that both Ward and Bondurant were acting within "the scope of their employment" on the night of the fire as they were "working overtime on company business." Id. at 334. At the same time, however, Tubbs acknowledged that the Employees did not need to smoke to perform their job-related duties, id. at 228, and that smoking was not listed in their job descriptions, id. at 229. During his deposition, he also admitted that on the night of the fire, he left the building before the Employees and could not state from personal knowledge "whether or not Ms. Ward and Ms. Bondurant were finished working before they began smoking . . . ." Id. at 252-53.

On December 9, 2003, Federal filed suit against the Employees, seeking indemnification for the costs of the fire damage. J.A. 7-11. The Employees responded by filing individual motions for summary judgment based on their assertion that they were insured under the Policy and hence immune from suit under Virginia's anti-subrogation rule. Id. at 12-13, 34-35. After reviewing the parties' briefs and hearing oral argument, the district court entered summary judgment in the Employees' favor. Id. at 135.

5

The district court held that Virginia's anti-subrogation rule barred Federal from bringing suit against the Employees. J.A. 134. According to the court, the Employees were covered under the liability section of the Policy, which provided that "employees . . . are insured, but only [1] for acts within the scope of their employment by [Transworld] or [2] while performing duties related to the conduct of [Transworld's] business." Id. at 502. The district court found that the Policy's phrase "while performing duties related to the conduct of [Transworld's] business" was synonymous with the definition of "course of employment." Id. at 133. Accordingly, the court referenced Virginia's definition of "course of employment," as elucidated in the workers' compensation context,[3] in determining whether the Employees were insured under the Policy. Id. The district court concluded that the Employees were acting within the "course of their employment" at the time they discarded their ashes, and accordingly, held that the Employees were insured under the Policy, immune from suit under Virginia's anti-subrogation rule, and thus entitled to summary judgment. Id. at 133-34.

Federal timely appealed. Id. at 136-37.

---

[3]Under Virginia law, an act is within the "course of employment," where it occurs during the period of employment, at a place where the employee is reasonably expected to be, and while the employee is reasonably fulfilling the duties of his employment or an act reasonably incidental thereto, such as going to and from work. J.A. 132-33 (citing Conner v. Bragg, 123 S.E.2d 393, 396 (Va. 1962); Brown v. Reed, 165 S.E.2d 394, 397 (Va. 1969)).

6

II.

We review the district court's grant of summary judgment de novo, viewing all factual inferences in the light most favorable to the nonmovant. Cont'l Airlines, Inc. v. United Airlines, Inc., 277 F.3d 499, 508 (4th Cir. 2002). Summary judgment is only appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the party moving for summary judgment has shown that there are no genuine issues of material fact, the nonmoving party has a burden to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If a nonmoving party, in opposing summary judgment, does not provide evidence on which a jury can rely to rule in the nonmoving party's favor, summary judgment is appropriate. Barwick v. Celotex Corp., 736 F.2d 946, 958-59 (4th Cir. 1984).

This case involves a question of contract interpretation, which is also subject to de novo review. Seabulk Offshore Ltd. v. Am. Home Assurance Co., 377 F.3d 408, 418 (4th Cir. 2004). We are not constrained by the district court's interpretation of the Policy, because "[t]he interpretation of a written contract is a question of law that turns upon a reading of the document itself,

7

and a district court is in no better position than an appellate court to decide such an issue."  Id.

Where, as here, our subject-matter jurisdiction is premised on diversity of citizenship, we must apply the substantive law of the forum state.  See Hitachi Credit America Corp. v. Signet Bank, 166 F.3d 614, 623-624 (4th Cir. 1999).  Under the law of the forum state, here Virginia, "the law of the place where an insurance contract was written and delivered governs questions of insurance coverage."  See Buchanan v. Doe, 431 S.E.2d 289, 291 (Va. 1993) (citing Lackey v. Virginia Sur. Co., 167 S.E.2d 131, 133 (Va. 1969)).  Because the insurance contract at issue was delivered in Virginia, see J.A. 454, the parties correctly agree that their dispute should be resolved in accordance with Virginia law.  With these principles in mind, we proceed to determine whether the Employees were insured under the Policy and thus immune from suit.

III.

A.

Federal argues that the district court erred in applying the concept of "course of employment," as elucidated in the workers' compensation context, to the facts of this case.  In particular, Federal asserts that the court erred at the outset in equating the phrase "while performing duties related to the conduct of [Transworld's] business," with the phrase "course of employment."

8

We agree.  In reading the contract as a whole, as we must, <u>see</u> <u>Transit Casualty Co. v. Hartman's, Inc.</u>, 239 S.E.2d 894, 896 (Va. 1978), it is apparent that "course of employment" and "while performing duties related to the conduct of [Transworld's] business" are not synonymous.

The Policy expressly distinguishes these two phrases.  In setting forth exclusions from coverage, the Policy provides that no employee is insured for bodily injuries occurring "while in the course of his or her employment <u>or</u> while performing duties related to the conduct of [Transworld's] business."  J.A. 502 (emphasis added).  As the two phrases are set off by the word "or," we are persuaded that they are intended to express distinct concepts. Moreover, the Policy's incorporation of the phrase "course of employment" indicates that the Policy's drafters employed that term where they sought to invoke that concept.  Consequently, the suggestion that they would employ a wordier phrase to express the "course of employment" concept elsewhere in the Policy defies logic.  Accordingly, the district court erred in equating "course of employment" with "while performing duties related to the conduct of [Transworld's] business," and in applying the definition of "course of employment" elucidated in the workers' compensation context to the facts of this case.

B.

We thus examine whether the court's grant of summary judgment was appropriate when the correct tests of coverage are considered. Because we find, as explained below, that the Employees' alleged act of negligence does not fall under either of the two classes of acts covered in the Policy, we hold that they were not insured under the liability section of the Policy.

1.

We begin by examining whether the act of flicking ashes into a wastebasket qualifies as an "act[] within the scope of [the Employees'] employment by [Transworld]." J.A. 502. Because we conclude that such an act is necessarily outside the scope of the Employees' employment, we are compelled to hold that they were not performing an act covered under this test when they flicked ashes into a paper-filled trash can.[4]

Under the "scope of employment" test set forth in Virginia, we think it plain that the act of flicking ashes into a wastebasket

_____

[4]Federal argues that smoking is necessarily for an employee's "external, independent, and personal motive," and thus outside the scope of employment. Appellant's Br. at 18. Because the inquiry relevant here is not whether smoking is within the scope of the Employees' employment, but rather whether flicking ashes into a paper-filled can is within the scope of employment, we refrain from deciding whether smoking itself would meet this standard. Thus, we decline to opine as to whether smoking is necessarily outside the scope of an employee's employment in Virginia, an issue that Virginia has yet to decide. Likewise, we do not consider what other states have said regarding whether smoking is within the scope of employment.

10

cannot be said to be within the scope of the Employees' employment. According to the Virginia Supreme Court, an act is within the scope of employment if:

> (1) it was expressly or impliedly directed by the employer, or is naturally incident to the business, and (2) it was performed, although mistakenly or ill-advisedly, with the intent to further the employer's interest, or from some impulse or emotion that was the natural consequence of an attempt to do the employer's business, "and did not arise wholly from some external, independent, and personal motive on the part of the [employee] to do the act upon his account."

Kensington Assocs. v. West, 362 S.E.2d 900, 901 (Va. 1987) (citations omitted). In discarding the ashes as they did, Ward and Bondurant both engaged in an act independent of any other job-related function that may have preceded, superceded, or even occurred simultaneously with the act of disposing of the ashes. That distinct act, which must be the focus of our inquiry, was not within the scope of employment. Although Transworld permitted smoking in its buildings, the negligent disposal of smoking materials was not directed by Transworld or naturally incident to Transworld's manufacturing business. In fact, at the exterior of its premises, Transworld provided its employees with urns specifically designed for the disposal of smoking materials. J.A. 224-25. Nor was the Employees' act of flicking ashes into a trash can performed with the intent to further the employer's interest or from an impulse to carry out the employer's business. The negligent conduct did not promote any business-related interest.

11

Rather, it compromised the employer's interest in maintaining a safe working environment. The Employees' conduct "ar[o]se wholly from some external, independent, and personal motive . . . ." Kensington Assocs., 362 S.E.2d at 901. We are thus compelled to conclude as a matter of law that the Employees were not engaged in an act in the scope of their employment when they flicked ashes into a paper-filled trash can on the night of the fire. Accordingly, they were not insured under the first test of coverage.

2.

We now turn to the second test of coverage under the liability section of the Policy, i.e., whether the Employees were "performing duties related to the conduct of [Transworld's] business" when they discarded their ashes. J.A. 502.

Under the plain language of the contract, the question before us is simply whether in discarding ashes into a paper-filled container, the Employees were "performing duties related to the conduct of [Transworld's] business." J.A. 502. On the night of the fire, Ward and Bondurant admittedly performed some duties related to the conduct of Transworld's business of manufacturing custom cable molded assemblies. Id. at 214. For instance, that evening, Ward, a purchasing manager, carried out her normal purchasing duties and set the burglar alarm. Id. at 31. Bondurant, a quality control manager and inside sales

12

representative, was also engaged in a job-related duty, namely the completion of a report for a client. Id. at 326. However, neither Ward, nor Bondurant can properly characterize the act of concern--discarding ashes in a wastebasket containing paper--as done in the performance of a work-related duty. Indeed, because the act of smoking was not within the Employees' job description or needed to perform a job-related duty, see J.A. 228-29, the subsidiary act of flicking ashes also cannot be characterized as the exercise of a duty. Thus, the even more circumscribed act of disposing ashes into a paper-filled wastebasket is certainly not the performance of a duty. Accordingly, we conclude that by this test, Ward and Bondurant were not performing a covered act when they discarded ashes into the wastebasket.

We would reach the same conclusion even if we read the phrase "while performing duties related to the conduct of [Transworld's] business" to suggest that any act an employee can accomplish as she performs job-related duties is necessarily covered. We think this is a strained reading of the contract given the illogical results it would engender. Under this temporal interpretation, a virtually limitless number of activities would be covered merely because they coincide with a job-related duty. By this rule, neither Federal, nor Transworld could ever anticipate the breadth of acts subject to coverage. Nonetheless, even under this strained interpretation, the Employees are still not insured, because they do not insinuate

13

that they were engaged in any simultaneous job-related duty at the precise moment when they flicked ashes in the trash can. All alleged job-related activities took place either before or after they flicked ashes into the can.

In sum, we hold as a matter of law that under the language of the liability section of the Policy, the Employees were not insured when they flicked ashes into a trash can containing paper. That act was neither within the scope of their employment, nor in performance of a job-related duty.[5]

C.

At this time, we consider the Employees' alternative arguments in favor of affirmance.[6] Because we find these arguments

_____

[5]We may conclude as a matter of law that the Employees are not insured under the two tests set forth in the liability section of the Policy, because there are no genuine issues of material fact left for resolution by the district court. Indeed, in moving for summary judgment, the Employees conceded that there are no facts in dispute, and that we may resolve the question of whether they are insured under the Policy on the record as it existed before the district court. J.A. 16, 40.

[6]Federal argues that this Court should not entertain the Employees' remaining arguments because they were not raised by Federal on appeal or addressed by the district court. According to Federal, to preserve their arguments, the Employees should have cross appealed under Federal Rule of Appellate Procedure 28(h). Federal, however, misunderstands this Court's ability to review arguments not addressed by a district court or briefed by an appellant. Although a court of appeals may not consider an argument not raised by an appellant as grounds for reversal, it may consider any evidence in the record as grounds for affirmance. See, e.g., El Paso Natural Gas Co. v. Neztsosie, 526 U.S. 473, 479 (1999) ("Absent a cross-appeal, an appellee may 'urge in support of

14

unavailing, we reverse the district court's grant of summary judgment and hold that the Employees are not insured under the insurance policy.

1.

The Employees argue that they are insured under the Policy because their personal property on Transworld's premises is covered under particular circumstances. We are not persuaded, however, because the Employees' argument is contrary to the plain language of the Policy and not supported by authority in Virginia.

The personal property section of the Policy provides that "[Federal] will pay for direct physical loss or damage to personal property of employees caused by or resulting from a peril not otherwise excluded." J.A. 352. Indeed, Federal indirectly compensated Ward for personal property losses totaling $230 by paying that amount to Transworld, who in turn made payment to Ward. The Employees derive their argument, in large part, from the Louisiana Court of Appeals' decision in State Farm Fire & Casualty

---

a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court,' but may not 'attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary.'") (quoting United States v. Am. Ry. Express Co., 265 U.S. 425, 435 (1924)); accord Oklahoma v. United States Civil Serv. Com., 330 U.S. 127, 135 n.3 (1947); Le Tulle v. Scofield, 308 U.S. 415, 421-22 (1940); Langnes v. Green, 282 U.S. 531, 538-539 (1931); Landram v. Jordan, 203 U.S. 56, 62 (1906); United States v. Blackfeather, 155 U.S. 180, 186 (1894); Mount Pleasant v. Beckwith, 100 U.S. 514, 527 (1880); The Stephen Morgan, 94 U.S. 599, 599 (1877); JH v. Henrico County Sch. Bd., 326 F.3d 560 (4th Cir. 2003); Rhodes v. Comm'r, 111 F.2d 53, 56 (4th Cir. 1940).

Co. v Sentry Indemnity Co., 316 So. 2d 185 (La. Ct. App. 1975).[7] The Employees's argument, however misses the point, because as a federal court sitting in diversity, we are obliged to discern and apply the law of Virginia, not Louisiana. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); see also United States v. Little, 52 F.3d 495, 498 (4th Cir. 1995). Yet, the Employees fail to cite any Virginia case stating categorically that if an employee's possessions are covered under certain provisions of a policy, they are rendered an insured under the entirety of that policy.

The Employees ask this Court to apply a strained reading of the Policy, which we may not do. Pilot Life Ins. Co. v. Crosswhite, 145 S.E.2d 143, 146 (Va. 1965) ("It is the function of the court to construe the language of the contract as written, and the court cannot make a new contract for the parties different from that plainly intended and thus create a liability not assumed by the insurer."). The Policy lists only one named insured, Transworld. See, e.g., J.A. 337, 464. Premiums were paid by that

_____

[7]In State Farm Fire & Casualty Co., the Louisiana Court of Appeals held that under Louisiana's anti-subrogation rule, an insurance company could not seek indemnification from a pastor (an employee of the covered church) because although the pastor was not a named insured, the insurance policy extended coverage to "[p]ersonal property [or] personal effects while located on the described premises, belonging to the insured, officers, partners or employees thereof." 316 So. 2d at 188. The court affirmed summary judgment in the pastor's favor, holding that the fact that the pastor's possessions were covered under the policy, rendered him a co-insured, and thus immunized him from a subrogation action by the insurance company. Id. at 188-89.

named insured, and Federal issued payments to that named insured. The plain language of the provision imparting protection to the personal property of employees specifically distinguishes employees from the insured. See J.A. 347, 352 (using the terms "you" and "your" to refer to the named insured and "employees" to refer to a separate, uninsured class). Also, nothing in the record establishes that the parties in entering the insurance contract intended to convey upon all employees the status of additional or co-insureds. The Employees do not indicate that they were the intended beneficiaries of the contract. See Walker v. Vanderpool, 302 S.E.2d 669 (Va. 1983) (In interpreting contracts, courts should enforce the intention of the parties). When asked whether he considered employees to be insured under the company's policy, Tubbs did not so indicate. See J.A. 315.

Moreover, the fact that Transworld's employees' possessions were only protected if under the "care, custody, and control" of Transworld suggests that Transworld sought insurance for the personal effects of employees only to protect itself from liability to its employees. J.A. 443 (emphasis added) (defining personal property of employees as "personal property owned or leased by your employee and in your care, custody or control"). Because Transworld effectively "assumed responsibility" for the personal property of employees that remained on the Transworld premises, Transworld had an independent interest in protecting that property.

17

We find further support for our conclusion in <u>Virginia Heart Institute, Ltd. v. Northside Electric Co.</u>, No A-908, 1982 WL 215281 (Va. Cir. Ct. Oct. 29, 1982) (unpublished), a Virginia Circuit Court opinion, which specifically rejects the categorical approach that the Employees advocate.[8]  In that case, the court addressed whether a provision in an insurance policy that extended some coverage to a subcontractor hired to make improvements on an existing building rendered that subcontractor a coinsured under the entire policy.  <u>Va. Heart Inst.</u>, 1982 WL 215281, *10-15.  A building owner brought suit against a subcontractor when a fire, worsened by the subcontractor's negligence, destroyed his building. <u>Id.</u> at *1.  The relevant portion of the insurance policy provided that "the Owner shall purchase and maintain property insurance upon the entire Work at the site to the full insurable value thereof.

---

[8]Although unpublished state cases are not binding on this Circuit, they can be instructive in resolving a question of state law.  <u>C.F. Trust, Inc. v. First Flight Ltd. P'ship</u>, 306 F.3d 126, 136 (4th Cir. 2002) (finding that no authority prevents a federal court from relying upon an unpublished state decision to assist in resolving a question of state law); <u>see also</u> <u>King v. Order of United Commercial Travelers</u>, 333 U.S. 153, 160-61 (1948) (holding that unpublished decisions are not binding, but noting that a court "properly attributed some weight" to an unpublished decision).  Likewise, we may follow the authority of a trial court unless we are persuaded that the state supreme court would reach a different conclusion under the same circumstances.  <u>See, e.g.</u>, <u>Cain v. Sec. of Health, Educ. & Welfare</u>, 377 F.2d 55, 58 (4th Cir. 1967) ("Where, as here, the Supreme Court has not had occasion to declare the law, the Secretary may follow the opinion of a <u>nisi prius</u> court; but if he believes its decision to be in conflict with what the Supreme Court 'would find' were the point presented to it, he may disregard that lower court's decision.").

This insurance shall include the interest of the Owner, the Contractor, Subcontractors, and Sub-subcontractors . . . ." Id. at *3. Under the contract, "Work" was defined to include "all labor necessary to produce the construction required by the Contract Documents, and all materials and equipment incorporated in such construction." Id. at *12. The court found that the subcontractor's insurable interest in the property only extended to the improvements made by the subcontractor and not to the preexisting structure. Id. Thus, the court concluded that even if the subcontractor was an insured party, its interest was limited to its insurable interest and hence "it [was] liable for damages beyond the amount of its insured interest." Id.

In sum, we find that the Employees were not insured, because the Policy identifies Transworld as the only insured, extends protection to Transworld's employees' personal property only in an effort to protect Transworld, the Employees have cited no authority in Virginia for the categorical approach they would have us embrace, and because we are persuaded by the reasoning of Virginia Heart Institute. We thus conclude that even if the Employees do have an insurable interest in the Policy, that interest, by the terms of the Policy, extends only to their personal property, which plainly does not include Transworld's building. J.A. 443 (buildings are excluded from the definition of "personal property of employees"). Accordingly, any limited coverage that was

19

afforded to the Employees does not serve to shield them from suit for destruction of the entire Transworld building.[9]

2.

Finally, the Employees argue that they are insured because a corporation can only act through its employees. Hence, according to the Employees, to cover the corporation but exclude all employees from coverage would in effect not cover the corporation. The Employees effectively suggest that whenever an employer purchases insurance, all acts of the employees are necessarily covered. However, the policy at issue here, specifically limits coverage to employees when they are engaged in acts within the scope of employment or are "performing duties related to the conduct of [Transworld's] business." Because the rule the Employees advocate would require us to ignore the plain language of the Policy, and would do injury to the ability of parties to control the manner in which they contract for insurance, we find their argument to be without merit. See Quesenberry v. Nichols, 159 S.E.2d 636, 640 (Va. 1968) (courts ought not apply a "strained or unjustified construction of [an insurance] policy . . ., which

---

[9]For the same reasons, we are not persuaded by the Employees' contention that Federal has waived its ability to claim that Ward is not an insured by virtue of its payment to Ward on account of Ward's property damage. The Employees maintain this argument applies with equal force to Bondurant because Federal concedes that had Bondurant also lost personal property during the fire, she too would have been compensated under the Policy. J.A. 155. The Employees' argument fails because, as stated above, the fact that their personal property was protected does not render them insured.

20

disregards the plain meaning and intent of the parties . . . ." (internal quotation marks and citations omitted)).

IV.

For the reasons stated above, we reverse the district court's grant of summary judgment, hold that the Employees were not insured under the Policy and thus not immune from suit, and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED