59088. FOWLER et al. v. INSURANCE COMPANY OF NORTH AMERICA et al.

SMITH, Judge.

Appellee Gilmer owned a residence which was partially destroyed by fire on October 21, 1976.[1] The residence was insured by

---

[1]The parties have stipulated that "[a]fter the fire of October 21, 1976, the actual cash value, and the fair market value of that portion of the residential property

the Insurance Company of North America, which paid Gilmer $28,505.50 pursuant to a homeowner's policy. In November, 1976, Gilmer employed Fowler "to repair the fire damage to the residence." On or about December 22, 1976, Gilmer reinsured the property. On January 5, 1977, when "the repair work being performed by . . . Fowler . . . was 95% completed," a second fire "of unknown origin . . . [and] not attributable to the negligence or fault of either . . . Gilmer or . . . Fowler completely destroyed the entire premises." Gilmer recovered $34,222.04 on his renewed insurance policy. See *Insurance Co. of N. A. v. Fowler,* 148 Ga. App. 509 (251 SE2d 594) (1978). Fowler and Home Insurance Company brought this action seeking to recover the reasonable value of materials and services supplied under the contract. The trial court granted Gilmer's motion for summary judgment, ruling "that in a case such as this where final payment is conditioned upon completion of the job, where both parties are covered by insurance, and where the builder is completely indemnified by his insurance company; there is no obligation upon the owner of the property to also pay the builder when the work he has completed is destroyed by fire prior to the full completion of the job as specified in the contract." We reverse with direction.

1. The resolution of the instant case depends upon which party bears the risk of loss with respect to the destruction of appellee's residence. Although the appellate courts of this state have not had occasion to address the precise issue presented by this case, the law which has evolved in most other jurisdictions is as follows: "One who has contracted to erect a building, or to construct some other physical object, is not discharged from his duty by the fact that fire or flood destroys his partly completed work. All the risks during performance are his, up to the time of completion and delivery of the result. Even though at the time of destruction the work was almost finished, the contractor is not discharged. This being so, there is no duty on the other party, either contractual or quasi contractual, to pay anything for the part performance that has been destroyed." Corbin on Contracts, § 1369, p. 522; Midwest Lumber Co. v. Dwight E. Nelson Construction Co., 188 Neb. 308 (196 NW2d 377) (1972). However, "[o]ne who has contracted to make repairs and additions to an existing building, [is] discharged by the destruction of the building

owned by Howell T. Gilmer which survived the October 21, 1976, fire, was $8,000.00, said value being attributable to a part of the carport of the premises, the entire foundation of the premises, the basement of the premises, the heating system of the premises, and the flooring of the premises."

The other facts provided in the main paragraph are also set forth in a mutual stipulation of fact.

after part performance, [and] has a right to compensation for the repairs and additions made before the destruction." Corbin on Contracts, § 1370, pp. 524-525. See Annot., 18 ALR3d 788 (1969).

The facts of this case do not fall neatly within either of the above-stated rules.[2] On the one hand, the portion of appellee's residence remaining after the initial fire cannot be classified as a "building." On the other hand, appellant did not contract to "erect a building" in its entirety. A substantial portion of appellant's residence remained intact after the initial fire and this remaining portion was incorporated into the rebuilt residence.

The underlying theoretical question presented by the above-stated rules appears to be whether there is a "specific physical object, the continued existence of which is necessary to performance." Corbin on Contracts, § 1338, p. 392. See Vogt v. Hecker, 95 NW 90 (Wis. 1903); Albus v. Ford, 296 SW 981 (Tex. Civ. App. 1927); LaGasse Pool Const. Co. v. City of Fort Lauderdale, 288 S2d 273 (Fla. App. 1974). "[A]n alteration or repair contract, by its very nature, specifies that work is to be done upon or within an existing structure. The destruction of the identified structure, therefore, without fault of either of the parties to the agreement under which the work is to be performed, logically renders the continuation of the work impossible." 28 ALR3d at 795. In such cases, the contractor "has a right to the reasonable value of the goods and materials, insofar as they have become the property of the [owner] ... The amount of this compensation is measured by the net addition to the value of the building just prior to its destruction." Corbin on Contracts, § 1370, p. 524-525. Corbin provides the following justification: "If the contractor has partly performed his repairs and additions to an existing building or other structure belonging to the defendant, the latter's wealth increases just as fast as the work proceeds. The goods, materials, and labor of the contractor are incorporated into the structure and become the defendant's property as fast as this incorporation occurs. Step by step, the additions have increased the market value of that property, for purposes of sale, insurance, and taxation. It is true that this value has been destroyed

---

[2]See LaGasse Pool Const. Co. v. City of Fort Lauderdale, 288 S2d 273, 274 (Fla. App. 1974), where the court announced the following rule: "In the case of contracts to repair, renovate, or perform work on existing *structures,* the general rule is that total destruction of the *structure* of res which is the subject matter of the contract, without fault of either the contractor or owner, excuses performance by the contractor and entitles him to recover for the value of the work done." (Emphasis supplied.) The portion of appellee's residence remaining after the initial fire more easily qualifies as a "structure" than a "building."

along with that of the original structure. With respect to both, res perit domino; there is no reason for distinguishing between the parts of the entire structure on the basis of date of origin or the length of defendant's ownership." Corbin on Contracts, § 1372, p. 531.

The parties in the instant case have stipulated that their agreement is a "repair" contract, the purpose of which was "to repair fire damage to the residence of Howell T. Gilmer." An examination of the document supports this conclusion. The contract begins with the following heading: "Subject: Replacement of Fire Damage." The document then sets forth in detail the materials and specifications to be used in the project. The partially destroyed carport is expressly included in the structure. The contract provides for the "removal of burned areas." The parties clearly contemplated that the rebuilt structure would include the portion of the residence which was not destroyed by the initial fire.

On the basis of the stipulated and uncontroverted facts in the record, we conclude that the contract in the instant case is a contract for repair, an implied condition of which is the continued existence of the underlying structure. The destruction of the underlying structure without the fault of either party excused appellant's duty of performance under the contract and entitled him to recover the reasonable value of the repairs as of the time immediately prior to the destruction of the premises. See Tripp v. Henderson, 158 Fla. 442 (28 S2d 857) (1947); *Myers v. Aarons,* 30 Ga. App. 750 (119 SE2d 223) (1923).

Appellee contends the contract in this case contains an express condition precedent which, not having been satisfied, precludes any recovery by appellants. Appellee refers to the following provision in the contract: "Final payment of this AGREEMENT will be due and payable to the CONTRACTOR upon completion." Although this provision does not expressly place the risk of loss on the contractor, appellee argues that it does so implicitly, since payment is conditioned upon "completion." However, in our view, the payment term alone does not contractually shift the risk of loss to appellant Fowler.[3] As a result of the total destruction of the residence, performance of the contract was rendered impossible. Appellant Fowler's performance under the contract was legally excused (*Brumby v. Smith & Plaster Co.,* 123 Ga. App. 443, 444 (181 SE2d 303) (1971)), and appellants are entitled to recover in quantum meruit the reasonable value of the repairs to appellee's residence. See *Williams v. Claussen-Lawrence Const. Co.,* 120 Ga. App. 190 (169 SE2d 692) (1969).

---

[3]Militating against appellee's position that the payment term in the contract

2. The parties have stipulated as follows: "As of January 5, 1977, the reasonable value of the repairs performed by Jim A. Fowler d/b/a Fowler Properties and Development to the premises owned by Howell T. Gilmer was $26,222.04, and said sum being the net addition to the value of the premises by Jim A. Fowler d/b/a Fowler Properties and Development." Accordingly, the judgment is reversed with direction that summary judgment be entered in favor of appellants in the amount of $26,222.04.

*Judgment reversed with direction. McMurray, P. J., and Banke, J., concur.*

ARGUED JANUARY 15, 1980 — DECIDED JULY 10, 1980 — REHEARING DENIED JULY 28, 1980 — 

*Howell Hollis, III,* for appellants.
*Hulon Murray, Stephen L. Goldner,* for appellees.

placed the risk of loss on Fowler is the fact that the contract specifically requires "OWNER to carry fire, tornado and other necessary insurance."

Fortunately, appellee was insured for the fire loss. See *Insurance Co. of N. A. v. Fowler,* supra.