## CIRCUIT COURT OF THE CITY OF RICHMOND

Starr Electric Co.

v.

Federal Insurance Co.

August 9, 1990

Case. No. LM 1590-1

By JUDGE MELVIN R. HUGHES, JR.

This matter is before the court on the stipulations by counsel for both parties. The facts are not in dispute.

This action touches and concerns the renovation of the Charles Building in the City of Richmond. The general contractor, Dixie Constructors, Inc. (Dixie), hired plaintiff, Starr Electric Company, Inc., of Greensboro, North Carolina (Starr), to perform the necessary electrical work for the sum of approximately $250,000.00. Dixie, pursuant to its agreements with the owners, subscribed to a performance bond and a payment bond for the project from the defendant, Federal Insurance Company of New Jersey (Federal). Starr obtained a floater installation insurance police from Aetna Casualty Insurance Co. (Aetna) applicable to its work on the project.

When Starr had completed nearly all of its work on the project, a fire broke out which gutted the building. Under its floater installation policy, Aetna paid Starr for the value of its losses in the fire. Dixie, though billed by Starr, did not pay the amount claimed by Starr to be due for its work on the project up to the time of the fire. Aetna, suing in Starr's name here, now seeks to enforce the payment clause of the subcontract and recover the amount claimed due. Federal maintains that the subcon-

tract, as well as the general contract and conditions thereof, which were incorporated into the subcontract, exonerate Federal from any obligation to pay those amounts to Starr or Aetna. It argues that (1) there was a failure of consideration by the destruction of the *res* of the contract, i.e., the Charles Building; (2) the risk of loss was contractually assumed by Starr; (3) Aetna insured both Starr and Dixie and as such Aetna may not subrogate against Dixie (or Federal) its insured, and (4) Starr has no standing to sue on the performance bond.

The Court finds that Aetna can maintain this action because it is subrogated to Starr's contract claim, not the fire loss claim. This is evident from examining Federal's contract defenses asserted as an alternative to its coinsured argument. That argument is that Aetna is doing nothing more than suing its insured, Dixie, through Starr for losses it paid Starr under a policy insuring both Starr and Dixie. The Court finds that this is not a case of coinsured or an insurer seeking recovery from its own insured. The Court also finds the contract defenses are without merit. Each of the defenses will be discussed below considering Federal's contentions.

### 1. *Contract Defenses*

Defendant's position is that the destruction of the Charles Building rendered the contract impossible to perform, and thus, the essential subject matter of the contract ceased to exist. *See*, 4B Michie's Jurisprudence, *Contracts*, § 69; *see also Housing Authority v. East Tennessee Light & Power Co.*, 183 Va. 64, 31 S.E.2d 273 (1944). Contrary to Federal's contention this well known contract principle looks prospectively to further performance, not to partial completion of the contract by one of the parties. That part of the contract that has been completed may entitle the performing party to the benefit of the consideration received, proportionally given with regard to the amount of work already completed. Whether Starr is entitled to payment for work done on the project though not finally completed is discussed below.

A contractor building a building "from scratch" must deliver a completed job, regardless of interim destruction

of the subject matter of the contract and is not released from the contract by fortuitous destruction. In the case of subcontractors who undertake to perform a part of the construction, if the project is fortuitously destroyed in the interim, that subcontractor or renovation contractor is released from his obligation to deliver a completed project, and the law gives him an enforceable claim on the promise to pay for the benefits received. *Atlantic and Danville Ry. Co. v. Del. Contr. Co.*, 98 Va. 503 (1900); *Ricks v. Sumler*, 179 Va. 571 (1942); *see also Fowler v. Insurance Co. of America*, 155 Ga. App. 439, 270 S.E.2d 845, 847 (1980).

Federal relies on Article 9 in the written subcontract, in support of its argument that Starr contractually assumed the risk of loss and cannot make a claim for payment here. However, article 9 is entitled "Indemnification" and speaks of Starr's holding Dixie harmless to third parties in the event of a claim, damage or injury. According to Federal, this shifts this claim for damages to Starr. This claim is based upon Starr's right to collect its unpaid billings for services rendered up to the time of that loss, not damages claimed by third parties. Starr furnished labor and materials to Dixie's benefit, increasing the value of the project as it proceeded, and thereby Starr is entitled to payment under a payment provision of the subcontract. Article 9 does not preclude Starr from suing Dixie for amounts due for work, labor and materials due under the contract.

Further, Federal relies on other subcontract provisions incorporating by reference general conditions of the contract between the owners and Dixie. Federal argues that by these provisions, the risk of loss shifted to Starr. Federal argues that while paragraph 1.1.3 of the general conditions defines "work"[1] and does not speak to assignment of risk among the parties, "work" when applied

---

[1] That definition is as follows:

**1.1.3 THE WORK**

The Work comprises the completed construction required by the Contract Documents and includes all labor necessary to produce such construction, and all materials and equipment incorporated or to be incorporated in such construction.

concurrently with the indemnification clause under article 9 of the subcontract means Starr agreed to hold Dixie harmless against any and all claims arising out of the work because the project was never completed. Again, any such argument based upon article 9 of the subcontract fails. By incorporating a definition of work into that article, Federal still cannot change the meaning of that provision when together they do not hold Dixie harmless in a claim by Starr for moneys due it by Dixie. Indemnification under Article 9 applies to claims for damages of third party claims, not for services rendered. While Aetna is subrogating to Starr's right of action, the cause of action is for performance of Starr's contract with Dixie. Again, while Aetna's right to subrogate arises because of payment to Starr for its fire loss, the rights *acceded to* here do not arise out of the fire loss and are totally independent thereof. Had there never been a fire, Starr still could have assigned the right to payment to anyone, including Aetna. The parties taking those rights would be in the same position that Aetna is in now. The fact of the fire does not affect that right as it applies to an action for payment of a contract obligation.

Federal also argues that, alone, since "work" means the completed project, unless the project is completed, no right to payment accrues. A reading of this contract provision, and the subsequent provision, 1.1.4, proves this not to be the case. 1.1.3 states, "The work comprises the *completed construction* required by the contract documents . . . ." (Emphasis added.. Federal argues then that "completed construction" means the finished project, and that until the "work" is delivered, no right of payment arises in favor of Starr. The Court construes this to mean the *substantial* completion of the construction agreement *as it progressed*. In the first place, the language in 1.1.3 by itself is somewhat ambiguous, and as the terms including "completion of the work" are ambiguous, the terms must be construed against Dixie. *Bank of Martinsville v. Ford*, 219 Va. 942, 946, 252 S.E.2d 354, 357 (1979). However, the language of the very next provision puts to rest any doubt as to the meaning of that section. Section 1.1.4 reads "the project is the *total* construction of which the *work performed* under the contract documents may be the whole or a part." (Emphasis added.) Clearly,

the contract contemplates severance of portions of the work to be done from the rest of the "project." Read in conjunction with the inclusive language of 1.1.3, the Court concludes that "work" means work done at a particular point in time. The work for which Starr is entitled to payment is that work completed at the time of the fire.

Finally, Federal relies on yet another general condition of the owner contract with Dixie to support a defense that the parties agreed to waive all claims against each other. Paragraph 11.3.6 of the general conditions reads in pertinent part:

> The Owner and Contractor waive all rights against (1) each other and the subcontractor, sub-subcontractor, agents and employees *each of the other*, and (2) the Architect and separate contractors, if any, and their subcontractors, sub-subcontractors, agents and employees, *for damages caused by fire or other perils to the extent covered by insurance obtained pursuant to this paragraph 11.3.6* or any other property insurance applicable to the Work . . . . (Emphasis added.)

Once again, the court is not convinced by this argument simply because the case is not based upon recovery for fire loss, but rather upon a payment claim. Because this is the nature of Starr's claim here, this waiver provision is not applicable, and contrary to Federal's contention, the risk of loss does not shift to Starr. Aetna, stepping into Starr's shoes, may recover the unpaid billings.

### 2. *Coinsured Status*

In view of the above analysis, Federal's argument, that as coinsureds, both Dixie and Starr are immune from subrogation suits here by Aetna, fails. As stated, this action is contract based, despite defendant's contentions to the contrary. The case of *Walker v. Vanderpool*, 225 Va. 266 (1983), stands for the proposition that a party who is contractually bound to acquire casualty insurance for the benefit of the other party to the contract and fails to do so may not proceed by legal action against the other party to recover a loss of the *res* of the con-

tract. That case is inapplicable to the present facts because again, this action is not to recover for the fire loss but for unpaid installments for work on the subcontract. As this is the nature of Starr's claim, none of Federal's cases which prohibit suits by an insurer against an insured (or co-insured) are apposite. Starr and Federal were not insured by Aetna against Federal's failure to pay a claim for payment of a contract obligation. Therefore, this question is resolved against Federal.

### 3. *Standing*

While Federal correctly argues Starr cannot bring this action under the performance bond because Starr is not a named obligee or intended beneficiary under that bond, there are two bonds in this case upon which Starr asserts its rights, a performance bond and a payment bond. The performance bond contains language to the effect that no right of action shall accrue to anyone other than the obligees named therein, the owners and a financing bank. Since Starr is not a named obligee, this language holds against Starr. But again, importantly, Starr's claim here is for payment for services rendered, and by the terms of the payment bond, it is an intended beneficiary, and thus it has standing to sue under that bond. The performance bond is meant to secure to the owners the assurance that the project will be completed while the payment bond is meant to secure to others, like Starr, a subcontractor, the project will generate and secure payment to them. On the payment bond, Starr is an intended beneficiary upon which it can maintain this action.

### *Conclusion*

For the following reasons, Starr's action is maintainable, and on the evidence, Starr shall have final judgment in the amounts prayed for and stipulated.